JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERTO DIAZ, | ) Case No. CV 25-5993-JPR |
| Plaintiff, | ) |
| v. | ) ORDER GRANTING PLAINTIFF'S MOTION<br>) TO REMAND AND REMANDING CASE TO<br>) LOS ANGELES COUNTY SUPERIOR COURT |
| NISSAN NORTH AMERICA, Inc., | ) |
| Defendant. | ) |

Plaintiff filed this action in Los Angeles County Superior Court on May 1, 2025. (Mot. Remand, Ex. 1, ECF No. 9-3 at 9.) The Complaint raises claims under the Song-Beverly Consumer Warranty Act for breach of express warranty, breach of the implied warranty of merchantability, and violation of California Civil Code section 1793.2(b). (Id. at 5-9.)

On May 12, 2025, Plaintiff personally served on Defendant a copy of the Complaint and Summons. (Id., Enav Decl., ECF No. 9-1 ¶ 6 & Ex. 2, ECF No. 9-4 at 2-3.) Defendant answered on June 30. The next day, Defendant removed the case to this Court. On July 31, Plaintiff moved to remand this action to state court, arguing

that the removal notice was untimely.  Defendant opposed on August 14, and a week later, Plaintiff replied and requested judicial notice.[1]  The Court heard argument on September 4 and took the matter under submission.

The parties have consented to the jurisdiction of the undersigned U.S. Magistrate Judge.  (See ECF No. 6.)  For the reasons discussed below, the Court GRANTS Plaintiff's Motion to Remand and ORDERS this action REMANDED to Los Angeles County Superior Court.

## BACKGROUND

The Complaint alleges that Plaintiff is a citizen of California and Defendant a Delaware corporation "operating and doing business in" California.  (Mot. Remand, Ex. 1, ECF No. 9-3 at 3.)  On December 4, 2022, Plaintiff leased from Defendant a 2023 Nissan Frontier.  (Id. at 4.)  Plaintiff purchased the vehicle on June 16, 2024.  (Id.)  "The Subject Vehicle, as reflected in the sales contract, has an approximate value of $62,114.36."  (Id.)  It was allegedly "delivered to Plaintiff with serious defects and nonconformities to warranty and developed other serious defects and nonconformities to warranty including, but not limited to, engine and electrical system defects."  (Id.)  "Plaintiff first presented the Subject Vehicle for repairs on or around September 10, 2024, with approximately 24,689 miles on the odometer, and reported a failure to start requiring a jump start."  (Id.)  "On or around September 14, 2024, with approximately 24,881 miles on the odometer, Plaintiff

---

[1] The Court granted Plaintiff's request for judicial notice at the September 4 hearing.  (ECF No. 18.)

presented the Subject Vehicle again and reported a recurrent failure to start requiring a jump start." (Id.) "On or around September 21, 2024, with approximately 25,194 miles on the odometer, Plaintiff presented the Subject Vehicle again and reported the 'Rear Automatic Braking ("RAB")' warning light illuminating on the instrument cluster." (Id.)

Plaintiff seeks recision of the purchase contract and restitution of all monies expended on the subject vehicle; general, special, incidental, and consequential damages; a civil penalty of two times the amount of actual damages; prejudgment interest; and attorney's fees and costs. (Id. at 9.)

**LEGAL STANDARD**

A defendant may remove a civil action from state court to federal district court. 28 U.S.C. § 1441. An action may be removed based on diversity jurisdiction. Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009). A court has diversity jurisdiction if the amount in controversy exceeds $75,000 and the lawsuit is between citizens of different states. See § 1332(a). Courts "strictly construe the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (per curiam); see Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941). The removing party bears the burden of establishing that removal is proper. See Gaus, 980 F.2d at 566.

Under § 1446(b)(1), a notice of removal "shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting

forth the claim for relief upon which such action or proceeding is based." Otherwise, "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." § 1446(b)(3).

For the 30-day clock to begin under § 1446(b)(1), "the ground for removal must be revealed affirmatively in the initial pleading." Harris v. Bankers Life & Cas. Co., 425 F.3d 689, 695 (9th Cir. 2005). When it is "unclear from the complaint whether the case is removable," the pleading is "indeterminate" and does not start the clock. Id. at 692-93. To trigger the 30-day clock under § 1446(b)(3), the "amended pleading, motion, order, or other paper must make a ground for removal unequivocally clear and certain." Dietrich v. Boeing Co., 14 F.4th 1089, 1095 (9th Cir. 2021). "When the defendant receives enough facts to remove on any basis under section 1441, the case is removable, and section 1446's thirty-day clock starts ticking." Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1253 (9th Cir. 2006).

"[N]otice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." Harris, 425 F.3d at 694. Although "defendants need not make extrapolations or engage in guesswork," the removal statute still "requires a defendant to apply a reasonable amount of intelligence in ascertaining removability." Kuxhausen v. BMW Fin. Servs. NA LLC, 707 F.3d 1136, 1140 (9th Cir. 2013) (citation

omitted).  That duty includes "[m]ultiplying figures clearly stated in a complaint."  Id.

"[W]hen a complaint filed in state court alleges on its face an amount in controversy sufficient to meet the federal jurisdictional threshold, such requirement is presumptively satisfied unless it appears to a 'legal certainty' that the plaintiff cannot actually recover that amount."  Guglielmino v. McKee Foods Corp., 506 F.3d 696, 699 (9th Cir. 2007).  But when it is "unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled," the removing party must establish by a preponderance of the evidence that the amount-in-controversy requirement is met.  See id.

A notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 89 (2014).  "Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation."  Id.  When removal is challenged, "[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'"  Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997)).

"If the notice of removal was untimely, a plaintiff may move to remand the case back to state court."  Carvalho v. Equifax

5

1  Info. Servs., LLC, 629 F.3d 876, 885 (9th Cir. 2010) (as amended)
2  (citations omitted).  A motion to remand must be made within 30
3  days after filing of the notice of removal.  § 1447(c).

**DISCUSSION**

5       The parties do not dispute that the Court has diversity
6  jurisdiction over this matter.  (See Mot. Remand, Mem. P. & A.,
7  ECF No. 9 at 6; Opp'n, ECF No. 11 at 8.)  Rather, Plaintiff moves
8  to remand on the basis that Defendant's notice of removal was
9  untimely and "procedurally defective as removability of this
10 action was clear and ascertainable from the face of [the]
11 Complaint."  (Mot. Remand, Mem. P. & A., ECF No. 9 at 6.)  He
12 asserts that the "Complaint and the requested prayer for
13 restitution and civil penalties alone, when conducting an
14 arithmetic calculation, establishes $186,343.08 in controversy."
15 (Id. at 10 (citation omitted); see also Reply, ECF No. 15 at 5.)
16 Defendant contends that its own factual investigation into
17 "Plaintiff's likely actual damages . . . not the allegations in
18 Plaintiff's Complaint" provided the basis for its conclusion that
19 the amount in controversy exceeds $75,000, and thus the 30-day
20 deadline under § 1446(b)(1) was not triggered by the Complaint.
21 (Opp'n, ECF No. 11 at 8.)
22      A.   The Amount in Controversy Is Clear from the Face of the
23           Complaint
24      Song-Beverly provides for restitution "in an amount equal to
25 the actual price paid or payable by the buyer," Cal. Civ. Code §
26 1793.2(d)(2)(B), and for a civil penalty of up to twice the
27 amount of actual damages, see § 1794(c), (e).  Certain offsets
28 are applied to the "actual price paid or payable by the buyer,"

including the "amount directly attributable to use by the buyer prior to the time the buyer first delivered the vehicle to the manufacturer or distributor." § 1793.2(d)(2)(C).  This offset is calculated by dividing the "number of miles traveled by the new motor vehicle prior to the time the buyer first delivered the vehicle . . . for correction of the problem that gave rise to the nonconformity" by 120,000 and multiplying the result by the "actual price of the new motor vehicle paid or payable by the buyer."  Id.  Effective January 1, 2025, additional offsets exist for negative equity; manufacturers' rebates and credits; and the actual price of "optional equipment, service contracts, or [guaranteed asset protection] financing purchased by the plaintiff."  Cal. Civ. Proc. Code § 871.27(b)-(d).[2]

    As noted above, Plaintiff seeks restitution, a civil penalty of two times the amount of actual damages, and attorney's fees, among other remedies.  (Mot. Remand, Ex. 1, ECF No. 9-3 at 9.)

        1.   <u>Actual damages</u>

    The Complaint alleges that the "Subject Vehicle, as reflected in the sales contract, has an approximate value of $62,114.36."  (Id. at 4.)  Defendant argues that "a vehicle's 'approximate value' is not synonymous with either actual damages under the Song-Beverly Act or the amount in controversy in the litigation."  (Opp'n, ECF No. 11 at 7.)  But a vehicle's

---

[2] For actions involving motor vehicles sold in 2025 and before, like Plaintiff's, manufacturers may elect to be governed by the new provisions. § 871.30.  Defendant has elected to do so, and thus the new provisions apply to this case.  (See Opp'n, ECF No. 11 at 11.)

"approximate value" has generally been accepted as a sufficient base value from which to determine actual damages and calculate the amount in controversy. See, e.g., Pulcini v. Ford Motor Co., No. 2:24-cv-08846-JLS-AS, 2024 WL 4836469, at *3 (C.D. Cal. Nov. 19, 2024) (granting plaintiff's motion to remand in similar circumstances because complaint specified subject vehicle's approximate value as $59,632.59 and sought restitution and civil penalties in amount two times actual damages, and thus it was clear from face of complaint that amount in controversy was at least $75,000); Calderon v. Nissan N. Am., Inc., No. CV 25-05137-AS, 2025 WL 2267923, at *2 (C.D. Cal. Aug. 7, 2025) (same in case involving complaint specifying subject vehicle's approximate value as $50,483.84); Hernandez v. Nissan N. Am., Inc., No. 8:25-cv-00276-FWS-ADS, 2025 WL 914758, at *2 (C.D. Cal. Mar. 26, 2025) (same in case involving complaint specifying subject vehicle's approximate value as $97,955.24); Estrada v. Nissan N. Am., Inc., No. 25-cv-00783-SK, 2025 WL 842173, at *2 (N.D. Cal. Mar. 18, 2025) (same in case involving complaint specifying subject vehicle's approximate value as $53,566); but see Covarrubias v. Ford Motor Co., No. 2:25-cv-00328-JLS-MAA, 2025 WL 907544, at *3 (C.D. Cal. Mar. 24, 2025) ("[I]n actions brought under the Song-Beverly Act, a complaint is indeterminate as to the amount in controversy when that complaint alleges only the approximate value of a vehicle without also providing any information as to the amount actually paid for the vehicle by plaintiff — i.e., the total cash price paid for a purchased, or monthly payments made on a leased, vehicle.").

The Complaint alleges facts sufficient to calculate the

mileage offset. In addition to providing the "approximate value" of the vehicle, it alleges that Plaintiff first presented the car for repairs for "failure to start requiring a jump start" on September 10, 2024, at which time the vehicle had "approximately 24,689 miles on the odometer." (Mot. Remand, Ex. 1, ECF No. 9-3 at 4.) This allegation provides the number of miles driven before Plaintiff first presented the vehicle for repair, as required for the mileage-offset formula.[3] See § 1793.2(d)(2)(C). And courts have used the "approximate value" of a vehicle as the basis for calculating the mileage offset.[4] See, e.g., Larios v. Nissan N. Am., Inc., No. 2:25-cv-05095-AJR, 2025 WL 2402250, at *6 (C.D. Cal. Aug. 16, 2025) (equating "approximate value" of

---

[3] Defendant argues that the Complaint "does not make unequivocally clear and certain which presentation was the first defect presentation relating to issues giving rise to the claim for which two or more repair attempts occurred for the purposes of calculating the mileage offset." (Opp'n, ECF No. 11 at 12-13.) That argument lacks merit. To begin, as Plaintiff correctly explains (Reply, ECF No. 15 at 4 n.3), the "unequivocally clear and certain" standard applies only to removal under § 1446(b)(3). See Dietrich, 14 F.4th at 1095. Further, the Complaint includes the mileage for each time Plaintiff presented the subject vehicle. (Opp'n, ECF No. 11 at 12; see also Mot. Remand, Ex. 1, ECF No. 9-3 at 4.) That is sufficient to calculate the mileage offset. See Messih v. Mercedes-Benz USA, LLC, No. 21-cv-03032-WHO, 2021 WL 2588977, at *5 (N.D. Cal. June 24, 2021) (allegation in complaint documenting when plaintiff first presented subject vehicle for repair and what mileage was on odometer at that time was sufficient for calculating mileage offset).

[4] Defendant contends that the "approximate value" is "particularly speculative here" because Plaintiff leased the subject vehicle before buying it, citing Tecson v. Mercedes-Benz USA, LLC, No. 2:25-cv-02918-FLA (PVC), 2025 WL 1504444 (C.D. Cal. May 27, 2025). (Opp'n, ECF No. 11 at 10 n.5.) Because Plaintiff seeks recision of the purchase contract rather than the lease (Mot. Remand, Ex. 1, ECF No. 9-3 at 4), that case is inapposite.

9

vehicle with "purchase price" and using that amount in offset formula); Estrada, 2025 WL 842173, at *2 (finding defendant's challenge to use of "approximate value" of vehicle "disingenuous," using "approximate value" in offset formula, and calculating offset).

True, the Complaint does not include values for the other statutory offsets.[5] It should have.  See Schneider v. Ford Motor Co., 756 F. App'x 699, 701 & n.3 (9th Cir. 2018) (concluding that estimated restitution amount did not account for values needed to calculate required mileage offset and explaining that consideration of mileage offset was "appropriate" because estimate of amount in controversy must be reduced if "a specific rule of law or measure of damages limits the amount of damages recoverable" (citation omitted)); Ayad v. Nissan N. Am., Inc., No. 2:25-cv-4152-RAO, 2025 WL 2490849, at *3 (C.D. Cal. Aug. 29, 2025) (finding in case involving section 871.27 offsets that complaint that did not include values other than vehicle's "approximate value" and mileage offset was "indeterminate" because it was "not clear whether the 'approximate value' in [it] [wa]s the actual price paid or payable, and not some other value that was included in the sales contract but was further discounted").  But given the particular facts of this case, the

---

[5] Plaintiff argues that section 871.27 "does not redefine 'actual damages' or the offsets and deductions" and that it instead "reiterates the definition set forth in Civil Code section 1793.2, subdivision (d)(2)(B) — namely, that actual damages are the 'actual price paid or payable by the buyer' of the vehicle." (Reply, ECF No. 15 at 5-6.)  That argument ignores the statute's plain text stating that the new offsets are to be included "in the calculation of the actual price paid or payable."  § 871.27.

10

absence of those values is not outcome-determinative. Here, Plaintiff's car had an "approximate value of $62,114.36" at the time of purchase (see Mot. Remand, Ex. 1, ECF No. 9-3 at 4), a "relatively high purchase price in relation to the jurisdictional threshold," and thus it is "reasonable to assume" that the other offsets "would not reduce Plaintiff's actual damages . . . so substantially that the amount in controversy would fall below the jurisdictional minimum." Larios, 2025 WL 2402250, at *6 (finding that because subject vehicle had "relatively high purchase price in relation to the jurisdictional threshold ($50,895), was less than a year old at the time of first repair (purchased on May 12, 2023 with first repair in December of 2023), and had only 6,780 miles on the odometer," it was "reasonable to assume" that the other offsets "would not reduce Plaintiff's actual damages . . . so substantially that the amount in controversy would fall below the jurisdictional minimum"); see also Schneider, 756 F. App'x at 701 (concluding that although estimate of amount in controversy did not account for mileage offset, it was "reasonable to assume that the [subject vehicles] did not lose nearly all of their value after a few years of use" and that such reduction would not be so substantial that amount in controversy would fall below jurisdictional minimum). And Ayad, upon which Defendant relies (Def.'s Suppl. Auth., ECF No. 16 at 2), did not cite or discuss Schneider or Larios.

        2.   Civil penalties

The Complaint reflects that Plaintiff seeks civil penalties in the amount of two times actual damages. (Mot. Remand, Ex. 1, ECF No. 9-3 at 9.) As Defendant concedes (Opp'n, ECF No. 11 at

14), the maximum amount of civil penalties factor into the amount in controversy. See Wang v. FCA US LLC, No. 8:24-cv-02060-JWH-KES, 2025 WL 1218745, at *2 (C.D. Cal. Apr. 28, 2025) ("The Ninth Circuit routinely considers civil penalties when deciding whether the amount-in-controversy requirement has been satisfied, including in Song-Beverly cases." (citing Babasa v. LensCrafters, Inc., 498 F.3d 972, 974 (9th Cir. 2007), & Morey v. Louis Vuitton North Am., Inc., 561 F. App'x 642, 643 (9th Cir. 2011))). Here, Defendant argues only that the civil penalties were indeterminate because the actual damages were speculative. (Opp'n, ECF No. 11 at 14.) True, an estimate of civil penalties may be uncertain when the actual damages alleged in a complaint are indeterminate. See, e.g., Woods v. Ford Motor Co., No. CV 24-01594-MWF (PVCx), 2024 WL 4709973, at *3 (C.D. Cal. Nov. 7, 2024) ("Because Defendant's calculation of actual damages is speculative, so too are its calculations of civil penalties."). But as explained above, the actual damages were determinable from the face of the Complaint, and thus Defendant was required to calculate civil penalties into the amount in controversy. See Kuxhausen, 707 F.3d at 1140. Applying simple multiplication, two times the subject vehicle's "approximate value" of $62,114.36 is $124,288.72. When actual damages and civil penalties — not to mention some amount of attorney's fees — are added together, the Complaint set forth a total amount in controversy well over the statutory minimum.[6]

---

[6] As the Court noted at the hearing, remand might be a closer call in a case involving a vehicle with a substantially lower alleged approximate value. The Court takes no position on how it

B. <u>Defendant's Removal of the Action Was Untimely</u>

Because the Complaint was determinate as to the amount in controversy, Defendant was required to remove the action within the 30-day deadline under § 1446(b)(1). See <u>Harris</u>, 425 F.3d at 692-93. As noted above, Defendant was personally served on May 12, 2025 (Mot. Remand, Enav Decl., ECF No. 9-1 ¶ 6 & Ex. 2, ECF No. 9-4 at 2-3), and thus the 30-day deadline for removal under § 1446(b)(1) expired on June 11. Defendant did not remove until July 1, 2025, 21 days after the applicable deadline. Accordingly, Defendant's removal of this action was untimely, and remand is proper. See <u>Solarte v. Nissan N. Am., Inc.</u>, No. CV 23-955-MWF (MRWx), 2023 WL 4624986, at *4 (C.D. Cal. July 19, 2023) (finding that removal was untimely "[b]ecause it is clear from the face of the Complaint that diversity jurisdiction exists, [so] Defendant was obligated, but failed, to remove this action within thirty days of being served with the Complaint," and remanding).

**CONCLUSION AND ORDER**

Consistent with the foregoing, Plaintiff's Motion to Remand is GRANTED and this action is REMANDED to Los Angeles County Superior Court.

IT IS SO ORDERED.

DATED: September 12, 2025

JEAN ROSENBLUTH
U.S. Magistrate Judge

---

would rule in such circumstances.